**Lenore K. MULLER, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 90–CV–759.**

United States District Court, N.D. Ohio, E.D.

May 26, 1992.

Patrick McLaughlin, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, and Mark L. Hoffman, Shaker Heights, OH, for plaintiff.

William J. Kopp, Office Of The U.S. Atty., Cleveland, OH, and Sharla Cerra, U.S. Postal Service, Washington, DC, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SAM H. BELL, District Judge.

Plaintiff Lenore K. Muller brought this personal injury action pursuant to the Federal Torts Claim Act, 28 U.S.C. 2671, *et seq.*, alleging negligence on the part of the United States of America and the United States Postal Service, and seeking damages for injuries sustained while on postal service premises in Garfield Heights, Ohio. Trial in this cause was held before the court on April 2, 1992. Based upon the evidence presented at trial, the court issues its findings of fact and conclusions of law.

*Facts*

On July 29, 1987, at approximately 11:15 a.m., plaintiff entered the Garfield Heights, Ohio, branch of the United States Post Office to mail a stack of letters. At the time, the sun was shining brightly through the glass doors of the post office entrance-

way. Immediately upon entering the post office doorway, plaintiff fell to the floor, sustaining fractures to the tibia and the fibula shafts of her right leg.

While there were no eyewitnesses to plaintiff's fall, a second postal customer, Mr. Jan Sroka, heard plaintiff cry out and went immediately to her assistance. Mr. Sroka noticed that carpet mats, which had been placed immediately inside the doorway by the post office custodian in the course of his regular duties, were overlapping each other by approximately two feet, and that there was a bulge of approximately two inches in the top-lying mat at the center of the doorway. Mr. Sroka had not noticed this bulge or any other irregularities as he entered the post office through that same doorway shortly before plaintiff's entrance. Plaintiff herself noticed the carpet overlap and the bulge in the top-lying carpet, but only after her fall; she had not been looking at the floor or the carpets as she entered the post office on that day.

Mrs. Muller had been a regular customer of this particular post office since 1961. She was aware of the layout of the interior areas of the post office, and was aware that post office personnel regularly placed carpet mats in the doorway and other areas of the premises. However, she had not expected to find the mats placed one on top of the other as she had seen them after her fall that day.

Michael Hicar, a superintendent of the Garfield Heights post office, acknowledged responsibility for maintaining a safe premises, and admitted that carpet mats were regularly placed in the lobby and doorway of the post office; he contended, however, that the mats in the doorway were overlapped by only an inch, on the rubber border of the mats, in order to provide an even surface for walking. Photographs of the mats and the lobby area in general seem to support this contention, but these photographs were taken by Hicar and were largely based upon a reconstruction of the scene as he recalled it.

Plaintiff herself was somewhat uncertain in her testimony concerning whether her foot actually caught on the carpet, or on anything else, which occasioned her to fall. Indeed, plaintiff testified that she did not remember her foot catching on anything; essentially, she remembered only that she walked into the doorway and "just went flying" to the floor.

*Conclusions of Law*

Pursuant to 28 U.S.C. 1346(b), claims in tort against the United States are to be determined by the law of the state in which the alleged tort occurred. *Sheridan v. United States*, 487 U.S. 392, 398, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988).

■ The parties agree that under Ohio law plaintiff was a business invitee on post office premises at the time of her accident. Generally, under Ohio law a "shopkeeper" owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 480 N.E.2d 474. This includes a duty to warn of latent dangers known to the shopkeeper, a duty to inspect the premises to discover possible dangerous conditions unknown to the shopkeeper, and a duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. *Perry v. Eastgreen Realty Co.* (1978), 53 Ohio St.2d 51, 52, 372 N.E.2d 335.

■ The parties present arguments over a number of factual and legal issues, such as: whether the carpet overlap was two feet or merely one inch; whether plaintiff could have or should have seen the alleged bulge in the carpet (had she been looking) due to or in spite of the effect of the sunlight through the glass doors of the post office, and the other attendant circumstances; whether defendant had actual or constructive knowledge of the dangerous condition; and the extent of defendant's duty to discover, remedy, or warn of the dangerous condition. The court finds that these issues need not be reached, however, inasmuch as the failure of plaintiff to present adequate evidence on two threshold

issues dictates our disposition in the present case. First, plaintiff failed to establish the existence of the alleged dangerous condition prior to or at the time of her fall; second, plaintiff failed to establish that this alleged dangerous condition actually caused her to fall. Proof of such facts is a prerequisite to the finding of a duty of care, or negligence, or liability on the part of a defendant. See *Perry, supra,* 53 Ohio St.2d at 52, 372 N.E.2d 335; *J.C. Penny Co., Inc. v. Robison* (1934), 128 Ohio St. 626, 193 N.E. 401.

■ Plaintiff's theory of negligence, briefly put, is that the overlapping of the mats caused the top mat to buckle and create a two-inch bulge, which in turn caused plaintiff's fall. In this court's opinion, the existence of this two-inch bulge prior to plaintiff's fall was not established by any direct evidence, nor by a preponderance of circumstantial evidence. Negligence cannot be inferred under Ohio law merely from the fact of an accident or an injury. *St. Mary's Gas Co. v. Brodbeck* (1926), 114 Ohio St. 423, 151 N.E. 323. Even were the court to find that an overlapping of the carpet existed at the time of Mrs. Muller's entrance, the only evidence which would support the conclusion that the carpet bulge existed before plaintiff's fall would be the inferential evidence deduced from the fact that the bulge existed after the fall.

Examination of the sample mats admitted into evidence, duplicates of those on the floor of the post office at the time, suggests such an inference to be improper. The mats in question are approximately six feet long by three feet wide, and approximately one-half inch thick. They consist of a bottom layer of rubber padding, with a top layer of carpet material. When stacked in the manner described by plaintiff and Mr. Sroka, and subjected to normal usage, the rubber layer of the top-lying mat adheres well to the carpet layer of the bottom mat, with no evident tendency to buckle or create a bulge. Thus, the court finds that the creation of the two-inch bulge, first noticed by plaintiff and Mr. Sroka after plaintiff's fall, was unlikely to have occurred from the normal, foreseeable course of pedestrian traffic. This, and the absence of any direct evidence to establish the existence of the bulge prior to plaintiff's fall, leads the court to conclude that the bulge was equally—if not more—likely to have been created by plaintiff's fall as it was by any negligence on the part of defendant in the stacking of the mats.

■ Were the court inclined to accept this inference despite the physical evidence, finding liability on the part of defendant would require yet another inference: that, in fact, it was the bulge in the carpet which caused plaintiff to fall. As noted above, plaintiff was unable to establish that she actually tripped on the alleged carpet bulge, or on anything else for that matter. In order to find liability in the absence of any evidence other than the fact that plaintiff fell, the court would have to draw an inference that plaintiff fell because she did indeed trip on a bulge in the carpet, the existence of which at the time of the fall is itself a matter of inference. Such a "stacking of inferences" is impermissible under Ohio law. *Motorists Mut. Ins. Co. v. Hamilton Twp.* (1986), 28 Ohio St.3d 13, 502 N.E.2d 204; *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 130 N.E.2d 820.

Although the general rule in federal courts is that drawing an inference from another inference is not prohibited, this view is subject to the limitation that all such inferences must be reasonable. See, e.g., *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321 (11th Cir.1982). In particular, the primary inference relied upon must be reasonable, and cannot be in conflict with undisputed facts. *Fenner v. General Motors Corp.,* 657 F.2d 1251 (5th Cir.1981), cert. denied 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653. Nor are such inferences proper if based merely upon conjecture or speculation. *Street v. National Broadcasting Co,* 512 F.Supp. 398, 409 (E.D.Tenn.1977); *Cecil Corley Motor Co., Inc. v. General Motors Corp.,* 380 F.Supp. 819, 827 (M.D.Tenn.1974); *Gold v. National Savings Bank of the City of Albany,* 641 F.2d 430, 435 (6th Cir.1981), cert. de-

nied 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100. As discussed above, the primary inference suggested by plaintiff—that the stacking of the mats created a dangerous bulge—is contradicted by the available physical evidence, and by the testimony of Mr. Sroka, which tended to show that no such bulge existed shortly before plaintiff's entrance. Thus, it would be only by a process of conjecture and speculation that the court could make either of the inferences necessary to a finding of negligence and/or liability on the part of the defendant in the present case—a process which this court finds it cannot reasonably undertake.

*Conclusion*

For the above reasons, the court finds no negligence and thus no liability on the part of defendant. Thus, the court finds in favor of defendant and against plaintiff on the issues presented for resolution. Therefore, the above-captioned cause is hereby terminated in its entirety.

IT IS SO ORDERED.