{¶ 22} I respectfully dissent from the analysis contained in the majority opinion. In this case, Rodriguez attributed his injury to the defective condition of a step in a stairwell of a building which RBA, by written contract, had leased to Network.
 {¶ 23} Webster's New Collegiate Dictionary (1976) defines a "lease" as "a contract by which one conveys real estate, * * * or facilities for a specified term and for a specified rent." In my view, whatever Network called itself at oral argument, the agreement between RBA and Network can only be deemed, actually, a lease. Indeed, the majority opinion admits that RBA was referred to in the agreement as the "Sublessor." RBA established in this case that its lessee, Network, had exclusive control over the premises, thus, it had no duty to protect Network's employee Rodriguez from the hazard he encountered at work.
 {¶ 24} The terms of the contract gave Network the authority to "operate" the garage. Network, as the "occupier" of the premises, had the sole authority to admit or to exclude people, whether they were customers parking in the garage or employees hired by Network. Network additionally had the authority to collect fees from the patrons, and, out of the fees collected, to deduct its costs and expenses incurred in "operating" the facility.
 {¶ 25} Thus, pursuant to the agreement, Network deducted from the fees collected the "costs of covering insurable risks pertaining to [garage] operations," wages for its employees, and "costs of maintenance and repairs." (Emphasis added.) The agreement required Network to maintain liability insurance which covered Network's employees. Only after all these deductions was Network required to pay an amount to RBA for rent.
 {¶ 26} RBA retained responsibility only to determine whatsecurity measures were needed for the premises. A fair reading of paragraph 10 of the contract demonstrates RBA agreed to indemnify Network against any failures to protect persons against "intentional wrongful acts" of third parties, rather than the overall safety of the premises.
 {¶ 27} RBA additionally established the foregoing with the other evidence submitted. Its property manager, Douglas Cappodora, averred that Network ordinarily would notify him of building defects; however, Network failed to inform RBA of any structural defects in the stairwells. Moreover, Rodriguez's own expert indicated the defect must have arisen "two to three years" before the 2002 date of the incident, and, under the terms of the agreement, Network assumed control of the property in 1997.
 {¶ 28} Fundamentally, the existence of a duty of ordinary care to business invitees is dependent upon the owner's possession and control of the property where the injury occurred. Simpson v. Big Bear Stores Co., 73 Ohio St.3d 103,132, 1995-Ohio-203; see also, Sweet v. D'Poo's (Feb. 3, 1994), Cuyahoga App. No. 65873. In this context, it is relevant to note that Perry v. Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, upon which the majority opinion relies for its analysis of the facts herein, did not involve a leased premises.
 {¶ 29} Indeed, the Ohio Supreme Court has stated in Wells v.Frank Hoover Supply (1986), 26 Ohio St.3d 186 at 188 the following:
 {¶ 30} "[T]he test to be applied in every case involving the liability of a property owner for injuries arising from the defective condition of premises under lease to another is whether the landowner was in possession or control of the premises, or the part thereof, the disrepair of which caused the injury. [Citation omitted.] The lessor is not liable for injuries to a third party in the absence of authority toexercise control over the premises to the exclusion of anycontrol by the lessee. [Citation omitted.] The control necessary as the basis for tort liability implies the power and the rightto admit people to the premises and to exclude people from it
* * *." (Emphasis added.)
 {¶ 31} In this case, the uncontroverted evidence demonstrated RBA lacked authority to exercise control over the premises toNetwork's exclusion. Since RBA thus was an owner "out of possession and control" of the premises where the injury occurred, therefore, Rodriguez could not sustain his claim of negligence. Under these circumstances, I believe the trial court "properly found that there [were] no genuine issues of material fact upon which [plaintiff] might be entitled to relief."Johnson v. Miller (Jan. 6, 1988), Summit App. No. 13201; Wellsv. Frank Hoover Supply, supra.
 {¶ 32} Accordingly, I would overrule Rodriguez's assignment of error, and affirm the trial court's order.